## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **KEVIN LOGAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 15-3325** |
| | ) | |
| **CITY OF LINCOLN, ILLINOIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

Defendant City of Lincoln, Illinois has filed a Motion for
Summary Judgment (d/e 17).  Because genuine issues of material
fact remain, the Motion is DENIED.

## I. INTRODUCTION

Plaintiff Kevin Logan worked for Defendant as a laborer in
Defendant's Streets and Alleys Department until Defendant
terminated Plaintiff's employment in April 2014.  In November
2015, Plaintiff filed a lawsuit against Defendant under the
Americans With Disabilities Act (ADA), 42 U.S.C. § 12101.  Plaintiff
alleged that Defendant violated the ADA by failing to engage in the

interactive process, refusing to provide Plaintiff with a reasonable accommodation, and terminating Plaintiff's employment because of his disability.

In April 2017, Defendant filed its Motion for Summary Judgment.  Defendant asserts that Plaintiff cannot establish that he is a qualified individual with a disability under the ADA or that his employment was terminated because of his disability.

In his response, Plaintiff states that he is not claiming that he was fired because of a disability.  Pl. Resp. at 13, n. 3 (d/e 19). Instead, Plaintiff argues that Defendant failed to accommodate Plaintiff's disability and, had Defendant made the accommodation, Plaintiff's employment would have not have been terminated.  Id. The dispute on summary judgment centers on whether operating commercial vehicles and equipment/machinery[1] are essential functions of the laborer position held by Plaintiff.

## II. FACTS

The Court takes the following facts from the parties' Statement of Undisputed Facts and other materials in the record.

---

[1] Defendant uses the terms "equipment" and "machinery" interchangeably. The Court will use the term "machinery."

See Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

In February 1999, Defendant hired Plaintiff to work as a laborer in its Streets and Alleys Department. The duties and responsibilities of the street department laborer position in place throughout Plaintiff's employment with Defendant are contained in the Position Description, which provides as follows:

DISTINGUISHING FEATURES OF WORK:

Under direct supervision, performs maintenance and repair of roads, bridges, signs, road striping, and related functions by semiskilled operation of tools, equipment, and light and heavy vehicles.

EXAMPLES OF WORK BUT NOT LIMITED TO:

1. Repairs, replaces and patches bituminous, concrete and other road surfaces; repairs and clean[s] culverts, storm grates, gutters[;] fills low places and ruts in shoulders; repair and paint guard rails; performs hand mowing and trimming; straightens, erects and cleans traffic signs and signals; trim and remove trees; plow snow, salt roads and shovel [handicap] ramps.

2. Operate trucks, tractors, mowing machines, snow plows, salt spreaders, compressors, motor graders, loaders, backhoes and other equipment as assigned.

3. Assist in servicing equipment such as trucks, tractors, mowing machines, snow plows, salt spreaders, compressors and other street equipment; lubricates and

make[s] minor adjustments, and minor reports of
assigned equipment.

4.  Performs routine housekeeping duties by cleaning,
maintaining stock piles of materials and other task[s]
associated with the general care of work area and
equipment; performs normal security measures in work
area.

5.  Directs traffic where road repairs are being made.

6.  Perform other duties as required or assigned which
are reasonably within the scope of the duties
enumerated above.

In addition, under the heading "Desirable Requirements," the

Position Description lists the following:  "Requires possession of an

Illinois Class 'B' commercial driver[']s license with appropriate

endorsements or to be able to have one within 30 days of hire."

In December 2013, Plaintiff injured his left eye.  Plaintiff

never returned to work after suffering the eye injury.  At no time,

however, did Plaintiff lose his Class B commercial driver's license.

Plaintiff received treatment for his eye from Dr. William W.

Yang.  On February 25, 2014, Dr. Yang sewed Plaintiff's left eye

shut in an attempt to get the scar on the eye to heal.  Plaintiff's eye

was sewn shut for two weeks.  Following the removal of the

stiches, Plaintiff's vision was a little blurry, and he could not see well enough to read.

On March 6, 2014, Mayor Keith Snyder sent Plaintiff a letter informing him that his Family Medical Leave would be exhausted as of March 10, 2014, and that Defendant expected Plaintiff to return to work on March 11, 2014 with medical documentation from his physician certifying that he was fit to return to work. In the alternative, Plaintiff could request additional leave accompanied by medical documentation identifying, among other things, Plaintiff's expected return date.

On March 7, 2014, Plaintiff submitted an Employee FMLA Leave Request to Defendant requesting that he either return to work with restrictions or have his leave extended to June 3, 2014. Around the same time that Plaintiff submitted the Employee FMLA Leave Request, Defendant sent Plaintiff for an examination by Dr. Daniel Brownstone.

On March 11, 2014, Defendant sent correspondence to Dr. Brownstone and Dr. Yang requesting specific information. The letter stated, in part, as follows:

> The City of Lincoln operates a public works department
> which provides service to the City's citizens.  In order to
> provide these services, laborers are required to drive
> vehicles, operate heavy machinery including, but not
> limited to[,] backhoes and street sweepers, repair
> streets, as well as perform other duties.  Laborers are
> required to maintain a commercial driver's license (so
> that they can drive trucks that require a commercial
> driver's license to operate) as a condition of employment.
> It is the City's understanding that [Plaintiff's] eye
> condition precludes him from currently driving any
> vehicle that would require a driver to possess a
> commercial driver's license.

Defendant asked the doctors for information regarding Plaintiff's eye condition, whether the eye condition interfered with Plaintiff's ability to perform the duties of his job, and how long the eye condition would interfere with Plaintiff's ability to do his job.

Around March 19, 2014, Defendant received a response from Dr. Yang.  Dr. Yang informed Defendant that Plaintiff's left eye vision was 20/200 which, from his understanding, would not allow Plaintiff to have a commercial driver's license for operating machinery and vehicles.  Dr. Yang could not provide a date by which he expected Plaintiff to be able to return to driving and operating machinery, noting that such estimation "is highly dependent on his ability to heal."  Finally, Dr. Yang advised that: "Currently, there are no steps that I can recommend that

[Defendant] take to allow [Plaintiff] to return to work.  However, if there are any activities that would allow him to perform his job with one functional eye, that would be perfectly reasonable with our current situation."

Around March 19, 2014, Defendant received a response from Dr. Brownstone.  Dr. Brownstone informed Defendant that Plaintiff's left eye vision was 20/100 and he was not legal to drive any vehicle that required a commercial driver's license.  He stated that Plaintiff could still drive on a regular license because only one eye is required to drive legally in Illinois.  Dr. Brownstone further opined that Plaintiff should not be allowed to operate any machinery that required depth perception because the vision in Plaintiff's left eye was so impaired.  Dr. Brownstone could not predict when Plaintiff would be able to drive commercial vehicles or operate machinery.  Finally, Dr. Brownstone advised that Plaintiff would be on long-term disability the remainder of the year "unless his job description can be modified to the point where he is not required to drive commercial vehicles and operate heavy machinery."

On March 26, 2014, Mayor Snyder sent a letter to Plaintiff advising him that his request for an extension of leave was denied. Mayor Snyder offered Plaintiff an opportunity to attend a meeting on March 31, 2014, at which Plaintiff could suggest any accommodations that would allow Plaintiff to perform the essential functions of his job. Alternatively, if there were no such accommodations, Plaintiff could explain why Defendant should not terminate Plaintiff's employment.

On March 31, 2014, a meeting was held at Mayor Snyder's office between Plaintiff, Mayor Snyder, Village Administrator Sue McClaughlin, the City Attorney, and two union representatives. During the meeting, Plaintiff handed Mayor Snyder, McClaughlin, and the City Attorney a copy of the ADA. Mayor Snyder pushed the document back to Plaintiff and said, "you weren't hurt on the job. It's not my responsibility to accommodate you."

Mayor Snyder recalls making a statement to that effect, although he does not recall that he made it during the March 31, 2014 meeting. Mayor Snyder explains that the statement was made in the context of Plaintiff requesting light-duty status. Defendant's Street and Alley Department had a policy that

employees injured on the job would perform light duty work until released from a doctor's care.  In any event, Plaintiff was told at the meeting that he was not going to be accommodated because he was not hurt on the job.

At the time of the meeting, the vision in Plaintiff's left eye was 20/100.  Plaintiff expected that he needed one more procedure performed on his eye to improve his vision to 20/30 in his left eye.  Plaintiff is not sure if that surgery was scheduled at the time the meeting took place.  No decision was made on whether to terminate Plaintiff's employment during the meeting.

On April 17, 2014, Plaintiff gave Defendant a letter from Dr. Yang.  Plaintiff asserts, but Defendant disputes, that Dr. Yang released Plaintiff to return to work without restriction.  The same day Plaintiff presented Dr. Yang's letter, Defendant directed Plaintiff to undergo a fitness-for-duty evaluation with Dr. Dru Hauter.  On April 21, 2014, Dr. Hauter provided Defendant with written documentation indicating that Plaintiff was fit to return to duty with the only limitation being "no commercial driving."  Defendant notified Plaintiff via letter dated April 23, 2014, that his employment was terminated effective April 24, 2014.

**Page 9 of 19**

In response to the Motion for Summary Judgment, Plaintiff submitted an affidavit stating that he would often go more than a month without driving a commercial vehicle in his job as a laborer. Affidavit ¶ 21 (d/e 19-1).  Moreover, in the 15 years Plaintiff worked for Defendant, there was never an instance when all of the people who were working needed to drive a commercial vehicle at the same time.  Id. ¶ 19.  In fact, at one point in time, the department had nearly twice as many workers as commercial vehicles.  Id.

### III. JURISDICTION

This Court has subject matter jurisdiction because Plaintiff asserted claims based on federal law.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  Venue is proper because the events giving rise to the claim occurred within the judicial district of this Court.  See 28 U.S.C. § 1391(b)(2) (a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

## IV. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  No genuine issue of material fact exists if a reasonable jury could not find in favor of the nonmoving party.  Brewer v. Bd. of Trs. of the Univ. of Ill., 479 F.3d 908, 915 (7th Cir. 2007).  When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor.  Blasius v. Angel Auto., Inc., 839 F.3d 639, 644 (7th Cir. 2016).

## V. ANALYSIS

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . discharge  . . . and other terms, conditions, and privileges of employment."  42

U.S.C. § 12112(a).  An employer's failure to make a reasonable accommodation to the known physical limitations of an otherwise qualified individual with a disability constitutes discrimination unless the employer can demonstrate undue hardship.  42 U.S.C. § 12112(b)(5)(A); see also Basith v Cook Cnty., 241 F.3d 919, 927 (7th Cir. 2001) (noting that two distinct categories of disability discrimination claims exist under the ADA: (1) disparate treatment claims and (2) failure to accommodate claims).

Plaintiff asserts that Defendant failed to provide a reasonable accommodation for his disability.  See Pl. Rep. at 13 (d/e 19).  To ultimately succeed on this claim, Plaintiff must prove that (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) Defendant failed to reasonably accommodate the disability.  Bunn v. Khoury Enters., Inc., 753 F.3d 676, 682 (7th Cir. 2014).

Defendant does not dispute that Plaintiff is disabled within the meaning of the ADA.  See Def. Mot. at 14.  Defendant argues, however, that Plaintiff is not a "qualified individual" as that term is used in the ADA.

Determining whether an individual with a disability is "qualified" requires a two-step inquiry.  Plaintiff has the burden of showing that (1) he satisfies the prerequisites of the position, such as educational background, experience, and skills; and (2) that he could perform the essential functions of the laborer position with or without a reasonable accommodation.  See Budde v. Kane Cnty. Forest Pres., 597 F.3d 860, 862 (7th Cir. 2010) (citing 29 C.F.R. § 1630.2(m) (defining the term "qualified" with respect to an individual with a disability)); Bultemeyer v. Fort Wayne Cmty. Schs., 100 F. 3d 1281, 1284 (7th Cir. 1996).

The parties do not appear to dispute that Plaintiff satisfies the prerequisites for the position.  Defendant argues, however, that Plaintiff cannot come forth with any evidence to show that, at the time of the adverse action, he could perform the essential functions of the laborer position with or without a reasonable accommodation.  Def. Mot. at 11.  Specifically, Defendant asserts that the undisputed facts show that Plaintiff cannot perform the essential functions of operating trucks, tractors, mowing machines, snow plows, salt spreaders, compressors, motor graders, loaders, backhoes, and other equipment with or without

reasonable accommodation.  Id.  Defendant points out that

Plaintiff had significant vision loss in his left eye and that Plaintiff's

own doctor and an independent medical evaluator opined that

Plaintiff could not operate trucks or machinery.  Id.

Plaintiff asserts that the Motion for Summary Judgment

"boils down" to whether driving a commercial vehicle is an

essential function of the job.  Pl. Resp. at 12.  Plaintiff argues that

this issue is a disputed question of fact for the jury.

Plaintiff does not argue that operating machinery is not an

essential function of the laborer job.  In fact, Plaintiff does not

address the operation of machinery at all.  However, the Court

finds a question of fact remains whether Plaintiff could perform the

essential function of operating machinery.  While Dr. Yang and Dr.

Brownstone opined that Plaintiff could not operate machinery, Dr.

Hauter subsequently determined that Plaintiff's only limitation

pertained to commercial driving.  Therefore, because a genuine

issue of fact remains whether Plaintiff can perform the essential

function of operating machinery, summary judgment is

inappropriate on this issue.  See, e.g., Branham v. Snow, 392 F.3d

896, 905 (7th Cir. 2004) (finding the plaintiff survived summary

judgment motion where he raised a genuine issue of fact as to whether he could perform the essential functions of the job).

The Court also finds that, viewing the evidence in the light most favorable to Plaintiff, a genuine issue of fact remains whether commercial driving is an essential function of the laborer position. An essential function is a fundamental job duty of the employment position the individual holds.  29 C.F.R. § 1630.2(n)(1).  The term does not include "marginal functions of the position."  Id.  A job function may be considered essential for several reasons, including, but not limited to, the following: (1) the reason the position exists is to perform that function; (2) the limited number of employees available among whom the performance of that job function can be distributed; and/or (3) the function is highly specialized so that the employee is hired for his or her expertise or ability to perform the particular function.  29 C.F.R. § 1630.2(n)(2).

The type of evidence that may be considered in determining whether a function is essential includes, but is not limited to:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3); see also Basith, 241 F.3d at 928 (written job descriptions that that do not fall within § 1630.2(n)(3)(ii) "are clearly instances of the employer's judgment as to which functions are essential").  Whether a task is an essential function of the job is a question of fact.  Brown v. Smith, 827 F.3d 609, 613 (7th Cir. 2016).

Several of the relevant factors support a finding that driving a commercial vehicle is an essential function of the laborer job. Defendant states that driving a commercial vehicle is an essential function.  The written job description identifies the "distinguishing features of work" as including the operation of light and heavy vehicles.

However, Plaintiff has also presented evidence from which a reasonable jury could find that driving a commercial vehicle is not an essential function of the laborer position.  The Position Description lists possession of an Illinois Class B commercial driver's license as a "desirable requirement," not a mandatory requirement.  The Position Description—which lists the operation of light and heavy vehicles as a distinguishing feature of the job— does not indicate which vehicles require a commercial driver's license, how many commercial vehicles are in the department, or how often those vehicles are used.  A reasonable inference can be drawn that some of the vehicles used by the laborers do not require a commercial driver's license.

Plaintiff submitted his Affidavit indicating that in the 15 years he worked as a laborer, there was never an instance where all of the people who were working needed to drive a commercial vehicle. In addition, driving a commercial vehicle was something Plaintiff did fairly infrequently and it was typical that he would not drive a commercial vehicle during the course of an entire month.  See Basith, 241 F.3d at 929 n. 2 (noting that the amount of time spent performing the function is a factor used to determine whether the

task is an essential function) (citing 29 C.F.R. § 1630.2(n)(3)(iii)).
An activity is not essential "if it [is] so small a part that it could be
reassigned to other employees at a negligible cost to the employer."
Kauffman v. Petersen Health Care VII, LLC, 769 F.3d 958, 962 (7th
Cir. 2014) (reversing summary judgment and finding factual issues
remained whether wheeling nursing home residents to and from
the beauty parlor was an essential part of the hairdresser's job
where the plaintiff presented evidence that the task was a small
part of her job).

Taking the evidence in the light most favorable to Plaintiff, the
Court finds that questions of fact remain whether Plaintiff could
perform the essential function of operating machinery and whether
operating a commercial vehicle was an essential function of the
laborer position. Therefore, Defendant's Motion for Summary
Judgment is denied.

## VI. CONCLUSION

For the reasons stated, Defendant's Motion for Summary
Judgment (d/e 17) is DENIED. The Final Pretrial Conference set
for September 5, 2017 at 2:00 p.m. is VACATED and RESET to
September 1, 2017 at 2:00 p.m. The case remains set for a Jury

Trial on September 19, 2017 at 9:00 a.m.  The parties are directed
to review and comply with the Court's Standing Order on Final
Pretrial Conferences, Exhibits, and Jury Instructions.

**ENTER: July 20, 2017**

**FOR THE COURT:**

_s/Sue E. Myerscough_
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**